UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., *Plaintiff*, v. U.S. DEPARTMENT OF JUSTICE, *Defendant*. | Civil Action No. 17-cv-00029 (DLF) |

## MEMORANDUM OPINION

Judicial Watch, Inc. challenges the United States Department of Justice's response to two Freedom of Information Act (FOIA) requests seeking email correspondence involving Peter Kadzik, the former Assistant Attorney General for Legislative Affairs. Before the Court are the Department of Justice's Motion for Summary Judgment, Dkt. 16, and Judicial Watch's Cross-Motion for Summary Judgment, Dkt. 18. For the reasons that follow, the Court will grant the Department of Justice's Motion for Summary Judgment and deny Judicial Watch's Cross-Motion for Summary Judgment.

## I. BACKGROUND

### A. Procedural History

On November 2, 2016, CNN reported that WikiLeaks had released a hacked email sent from Peter Kadzik's personal email account to a personal email account used by John Podesta, who was then serving as the chairman of former Secretary of State Hillary Clinton's presidential campaign. Compl. ¶ 5, Dkt. 1 (citing Laura Koran, *Hacked Email Appears to Show DOJ Official Tipping Clinton Campaign About Review*, CNN (Nov. 2, 2016, 10:47 AM), https://www.cnn.com/2016/11/02/politics/peter-kadzik-john-podesta-wikileaks/index.html). Kadzik's May 19,

2015 email to Podesta, which was attached to an earlier filing in this case, refers to matters "concerning the State Department's review of former Secretary Clinton's emails." *Id.*

Five days after the CNN report, Judicial Watch submitted two FOIA requests to the Department of Justice's FOIA/Privacy Act Mail Referral Unit. *See* Def.'s Statement of Material Facts ¶ 1, Dkt. 16-1; First Brinkmann Decl. ¶ 3, Dkt. 16-3. Judicial Watch's first request sought (1) emails conducting official business that were "sent to or received by" Kadzik at his personal email account from January 1, 2016 to November 7, 2016, and (2) emails that were copied or forwarded from Kadzik's personal email account to his official government email account during the same timeframe. *See* Def.'s Statement of Material Facts ¶ 5. Judicial Watch's second request targeted emails that Kadzik exchanged with the following individuals from December 1, 2014 to November 7, 2016 while using either his personal email account or his official government email account: (1) "any non-government employee," if the email relates to Clinton's use of "non-state.gov email to conduct official government business," (2) John Podesta, and (3) "any official, officer, or employee" of Clinton's presidential campaign. *Id.* ¶ 6.

On November 17, 2016, the Department of Justice's FOIA/Privacy Act Mail Referral Unit acknowledged Judicial Watch's FOIA requests by sending two letters notifying Judicial Watch that the requests were referred to the Office of Information Policy (OIP), an office within the Department of Justice that processes FOIA requests seeking records from the offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Legal Policy, Legislative Affairs, and Public Affairs. *See* First Brinkmann Decl. ¶¶ 3-4. Four days later, OIP sent Judicial Watch two emails identifying the tracking numbers assigned to each FOIA request. Compl. ¶ 14. After 45 days passed without OIP producing records responsive to the requests, Judicial Watch commenced this lawsuit on January 5, 2017. *See* Compl. ¶¶ 17–18; First

Brinkmann Decl. ¶ 7.  Four months later, OIP released fifty-six pages of records responsive to Judicial Watch's FOIA requests.  *See* First Brinkmann Decl. ¶ 22 (discussing OIP's April 28, 2017 letter providing the agency's final response to Judicial Watch's FOIA requests).

On June 12, 2017, the Department of Justice moved for summary judgment.  Def.'s Mot., Dkt. 16.  In support of its motion, the Department of Justice submitted a sworn declaration by OIP Senior Counsel Vanessa R. Brinkmann, the official responsible for supervising OIP's FOIA request processing.  Brinkmann's declaration describes the searches OIP conducted of Kadzik's official Department of Justice email account and the searches Kadzik conducted of his personal Gmail email account.  *See* First Brinkmann Decl. ¶¶ 9–21.

Judicial Watch opposed the Department of Justice's motion and filed a cross-motion for summary judgment.  *See* Pl.'s Opp'n & Cross-Mot., Dkt. 17.  Judicial Watch does not challenge OIP's searches of Kadzik's official email account but contends that the Brinkmann declaration's description of Kadzik's searches of his personal email account lacks sufficient detail to assess whether Kadzik's searches were adequate and reasonably calculated to discover the records that Judicial Watch seeks.  *Id.* at 1–2.  Judicial Watch deems the declaration defective because: (1) it does not provide sufficient evidence about how Kadzik searched for work-related emails in his personal email account; and (2) it does not explain why the same search terms were not used to search Kadzik's official Department of Justice and personal email accounts.  Judicial Watch Reply at 2, Dkt. 21.

On June 6, 2018, the Court heard argument on the parties' cross-motions for summary judgment.  *See* Hr'g Tr., June 6, 2018, Dkt. 27.  Thereafter, the Court ordered the Department of Justice to submit a supplemental declaration clarifying Kadzik's representations about his email practices and the electronic and manual searches he conducted of his personal email account.

Order of June 9, 2018, Dkt. 24.  In response to the Court's order, the Department of Justice filed a second declaration by Brinkmann that provides additional details.  *See* Def.'s Resp., Dkt. 28; Second Brinkmann Decl., Dkt. 28-1.  Despite this clarifying information, Judicial Watch contends that the Department of Justice has not met its burden to prove the adequacy of its searches, and Judicial Watch requests that the Court order the Department of Justice to conduct a new search of Kadzik's personal email account using the search terms identified in paragraph 13 of the first Brinkmann declaration: "Clinton" "HRC," "Hillary," "Podesta," "Palmieri," and "Fallon."  *See* Joint Status Report ¶¶ 14, 19, Dkt. 29.

Before addressing the merits of the parties' arguments, the Court summarizes the two Brinkmann declarations.

### B. The Brinkmann Declarations

The first Brinkmann declaration indicates that OIP launched a comprehensive search of Kadzik's official government email account "using a sophisticated 'electronic search and review platform.'"  Def.'s Statement of Material Facts ¶ 9 (quoting First Brinkmann Decl. ¶ 12).  To identify emails responsive to Judicial Watch's first FOIA request, OIP used Kadzik's personal email address as a search term with the goal of "captur[ing] any emails between Mr. Kadzik's DOJ and Gmail email accounts, including emails copied, blind copied, or forwarded between the two accounts."  First Brinkmann Decl. ¶ 12.  Staff from OIP reviewed the search results and determined that no retrieved records were responsive to Judicial Watch's FOIA request.  *Id.* ¶ 12. OIP nonetheless produced two email chains totaling fifteen pages that Kadzik had forwarded from his personal email account to his official government email account.  *Id*. at 5 n.2.  Although

neither email chain discussed official government business, OIP provided them to Judicial Watch "as a matter of discretion."[1] *Id*.

To retrieve emails responsive to Judicial Watch's second FOIA request, OIP also searched Kadzik's official government email account for the terms "Clinton," "HRC," "Hillary," "Podesta," "Palmieri," and "Fallon." Def.'s Statement of Material Facts ¶¶ 13–16, Dkt. 16-1. OIP selected these search terms based on Kadzik's representation that any communications he exchanged with Clinton's campaign employees "would have been limited to John Podesta, Jennifer Palmieri, or Brian Fallon." *Id.* ¶ 15 (quoting First Brinkmann Decl. ¶ 13). Using the search terms "Clinton," "HRC," and "Hillary" enabled OIP to capture any emails between Kadzik and non-government employees relating to Clinton's use of non-state.gov email to conduct official government business. *Id.* ¶ 16. As a result of these searches, OIP staff identified 56 pages of records that were responsive to Judicial Watch's second FOIA request. First Brinkmann Decl. ¶¶ 13, 34.

In light of Judicial Watch's allegations about Kadzik's use of his personal email account, "OIP reached out to [the Office of Legislative Affairs], and to Mr. Kadzik himself, to assess whether all relevant records would be encompassed by a search of his official DOJ account, and to confirm that Mr. Kadzik understood his obligations under the Federal Records Act and DOJ Policy to fully capture official records in DOJ recordkeeping systems, and/or to otherwise identify and provide them upon receipt of OIP's search notification." *Id.* ¶ 19. In particular, "government employees may not use a non-official e-mail account for official business unless the communication is fully captured in a [Department of Justice] recordkeeping system—either

---

[1] Invoking FOIA Exemption 6, which Judicial Watch does not challenge, OIP partially redacted six pages and withheld nine pages of the email chains to protect the identities of third parties. First Brinkmann Decl. at 5 n.2; *see also* 5 U.S.C. § 552(b)(6).

by copying their official account or forwarding any such messages to their official account within twenty days." First Brinkmann Decl. ¶ 14 n.4; *see also* Def.'s Statement of Material Facts ¶ 19, Dkt. 16-1. Following these discussions, Kadzik searched his personal email account using terms that were not identified in the first Brinkmann declaration. Def.'s Statement of Material Facts ¶ 21. The second Brinkmann declaration makes clear, however, that Kadzik searched "the entirety of his personal Gmail account, without any date-range or folder limitations." Second Brinkmann Decl. ¶ 8. And Kadzik used "to the best of his recollection . . . at a minimum—all of the search terms listed in paragraph 13 of the First Brinkmann Declaration" to conduct these electronic searches. *Id.* Kadzik also may have used "additional search terms, or additional variants on those search terms," but he does not recall those terms. *Id.*

Kadzik supplemented his term-driven searches by manually reviewing his personal email account's sent, inbox, and trash folders, First Brinkmann Decl. ¶ 16, which consisted of no more than approximately 600 total emails, Second Brinkmann Decl. ¶ 12. To conduct his manual search, Kadzik "reviewed the subject lines and to/from fields of all emails from the inbox, trash, and sent folders" and "opened and read any emails that, based on either their subject line, author, or recipient, could have been potentially DOJ-related." Second Brinkmann Decl. ¶ 10. Kadzik then "opened and read every single email in any of his archived folders that could have contained DOJ-related emails." *Id.* Kazdik's electronic and manual searches did not reveal the Podesta email[2] or any other records responsive to Judicial Watch's FOIA requests. First Brinkmann Decl. ¶¶ 9, 11.

---

[2] The government does not dispute that the Podesta email is authentic, and for the purpose of evaluating the pending motions, the government agrees that the Court should assume that the Podesta email is an agency record. *See* Hr'g Tr. at 78–79.

Based on Kadzik's dual searches and representations, OIP determined that it "had no basis to believe that any potentially responsive official records would likely be located in any records systems other than Mr. Kadzik's DOJ account." First Brinkmann Decl. ¶ 16. "Nonetheless, out of an abundance of caution, and in light of the allegations in the Complaint," Department of Justice attorneys in OIP, the Office of Legislative Affairs, and the Civil Division met again with Kadzik before he left the Department of Justice in January 2017. *Id.* ¶ 17. During that meeting, Kadzik made additional representations that bolstered OIP's confidence that Kadzik had no agency records in his personal email account, but OIP nevertheless requested that Kadzik again search his personal email account. Def.'s Statement of Material Facts ¶¶ 26, 27. Kadzic then searched his personal email account using the terms "Podesta," "johnpodesta@gmail.com," and "other variants" of those terms. *Id.* ¶ 29. He also manually searched his email folders again, including sorting and chronologically reviewing emails in his "sent" folder. *Id.* ¶ 30. These searches were "'designed to either locate, or confirm the non-existence of, the alleged email to John Podesta referenced in the complaint.'" *Id.* ¶ 28 (quoting First Brinkmann Decl. ¶ 19). As before, Kadzik failed to uncover any email that might be considered an agency record responsive to Judicial Watch's FOIA requests, including the alleged email from Kadzik to Podesta that was the subject of the CNN report. *Id.* ¶ 31. Kadzik ultimately "'confirmed that he did not recall ever using his personal Gmail account to send any other similar emails to John Podesta, or to anyone else associated with the Clinton Campaign.'" *Id.* ¶ 33 (quoting First Brinkmann Decl. ¶ 19). Kadzik represented to the Department of Justice that he was confident that his Gmail account did not contain any agency records or potential agency records. Second Brinkman Decl. ¶ 5.

## II.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable."  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks omitted).  All facts and inferences must be viewed in the light most favorable to the requester and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To meet this standard, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements."  *Nat'l Cable Television Ass'n, Inc. v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).  "The system of disclosure established by the FOIA is simple in theory . . . [a] federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)."  *DOJ v. Julian*, 486 U.S. 1, 8 (1988).

"[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam).  The agency's affidavit is accorded a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable

specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).

If, on the other hand, "material facts are genuinely in issue or, though undisputed, are susceptible to divergent inferences bearing upon an issue critical to disposition of the case, summary judgment is not available" to the agency. *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988). That said, courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III. ANALYSIS

The only dispute remaining in this case is whether the two sworn declarations by OIP Senior Counsel Vanessa R. Brinkmann describe the searches of Kadzik's personal email account in sufficient detail to demonstrate that the Department of Justice's searches were adequate and reasonably calculated to discover the records that Judicial Watch seeks. *See* Joint Status Report ¶¶ 14, 16. Despite the supplemental Brinkmann declaration, Judicial Watch continues to question whether Kadzik searched his personal email account using the same search terms that OIP used to search Kadzik's official Department of Justice email account.[3] *Id.* ¶ 16.

When the adequacy of an agency's search is challenged, the factual question is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs.*, 926 F.2d at 1201. If "the agency affidavits

---

[3] As noted, the search terms OIP used to search Kadzik's official Department of Justice email account are identified in paragraph 13 of the first Brinkmann declaration. *See* First Brinkmann Decl. ¶ 13.

. . . do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [a plaintiff] to challenge the procedures utilized," then genuine issues of material fact might exist about the adequacy of the agency's search, "and consequently summary judgment [might be] improper." *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980). It is well established in this jurisdiction, however, that agency declarations need not "set forth with meticulous documentation the details of an epic search for the requested records." *Perry*, 684 F.2d at 127. Moreover, the fact that a search does not produce responsive materials does not mean that the search was inadequate. *SafeCard Servs*, 926 F.2d at 1201. "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

Both the Federal Records Act and Department of Justice Policy Statement 0801.04 prohibit employees from using personal email accounts for official business communications unless they copy or forward those communications to their official email accounts within twenty days. *See* First Brinkmann Decl. ¶ 14 n.4. Absent evidence to the contrary, a government employee is presumed to have properly discharged the duty to forward official business communications from a personal email account to an official email account. *See*, *e.g.*, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("[T]here is a presumption of legitimacy accorded to the Government's official conduct."); *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) (courts presume that public officials "have properly discharged their official duties"). Thus, in a typical case, a search of a Department of Justice employee's personal email account would be unnecessarily duplicative of a search of the employee's official email account. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 241 F. Supp. 3d 14,

10

21–22 (D.D.C. 2017) (applying the presumption that an agency employee complies with email policies and not requiring an agency to produce records in a personal email account that would be duplicated in a government email account); *Wright v. Admin. for Children & Families*, No. 15-cv-218, 2016 WL 5922293, at *8 (D.D.C. Oct. 11, 2016) (federal law requiring agency employees to preserve official communications renders a search of their personal email accounts unnecessary).

In this case, however, based on the Podesta email, there is a question whether Kadzik properly discharged his duty to forward official business communications from his personal email account to his official email account. But here, the Department of Justice did not restrict its search to Kadzik's official email account. Instead, OIP reached out to both the Office of Legislative Affairs and to Kadzik to determine whether Kadzik's official government email account was the only record system likely to contain agency records responsive to Judicial Watch's FOIA requests. First Brinkmann Decl. ¶ 16. OIP also sought to confirm Kadzik's understanding about his obligation to make sure agency records were in a Department of Justice record system or to provide them in response to a search notification from OIP. *Id.*

Thereafter, on two separate occasions, Kadzik conducted multiple comprehensive electronic term and manual searches of his personal email account to ensure that it contained no records responsive to Judicial Watch's FOIA requests. On the first, Kadzik searched his personal email account using unidentified terms. *Id.* He also supplemented his term-driven search by manually reviewing the sent, inbox, and trash folders of his personal email account. *Id.* On the second, Kadzik searched his personal email account, at the direction of OIP attorneys, using the terms "Podesta," "johnpodesta@gmail.com," and "other variants" of those

terms.  *Id*. ¶ 29.  Kadzik also manually searched his email folders a second time, including by sorting and chronologically reviewing emails in his "sent" folder.  *Id.* ¶ 30.

Without knowing the specific terms that Kadzik used to conduct his electronic searches, and how Kadzik conducted his manual searches, it would be difficult to conclude that Kadzik's searches were reasonably calculated to discover the records Judicial Watch seeks.  *See Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017).  But the additional details provided in the second Brinkmann declaration submitted in response to the Court's June 9, 2018 order enable the Court to draw that conclusion here.  Specifically, the second Brinkmann declaration makes clear that Kadzik performed his first electronic term search using, "to the best of his recollection," the search terms listed in paragraph 13 of the First Brinkmann Declaration and additional search terms that Kadzik does not recall.  *See* Second Brinkmann Decl. ¶ 8.  And Kadzik searched his entire personal account, without any date-range or folder limitations.  *Id.*  The second declaration also indicates that Kadzik conducted thorough manual searches.  He not only reviewed the subject lines and to/from fields of all emails from the inbox, trash, and sent folders in his personal Gmail account, Kadzik also opened and read any emails that, based on either their subject line, author, or recipient, could have been potentially DOJ-related.  *Id.* ¶ 10.  In short, Kadzik "opened and read every single email in any of his archived folders that could have contained DOJ-related emails."  *Id.*

Notwithstanding these searches, Judicial Watch argues that the Court should order a further search of Kadzik's Gmail account because Kadzik's recent representations about his searches were made "to the best of his recollection," and over a year has lapsed since he conducted the searches.  Joint Status Report ¶ 16.  Judicial Watch views the phrase "to the best

of [Kadzik's] recollection" as a qualifier that signals that "neither the Justice Department nor [Kadzik] can remember what [Kadzik] did over one year ago." *Id.*

The Court disagrees. Not only is it customary for a declarant or affiant to qualify sworn statements by using the phrase "to the best of [one's] recollection," federal courts have required this phrase to be used when, for example, ordering a witness to verify the truthfulness of his answers. *See*, *e.g.*, *Henslee v. Simmons*, No. 1:04CV152-02-MU, 2010 WL 2180850, at *2 (W.D.N.C. May 25, 2010) (ordering a witness who chose to voluntarily answer a plaintiff's questions rather than be subpoenaed to supply a declaration stating that he attempted to provide truthful answers "to the best of his recollection"); *Cordeiro v. Hernandez*, No. 08-CV-01519-HCAB, 2009 WL 1044950, at *2 (S.D. Cal. April 17, 2009) (ordering a petitioner to submit a declaration "stating, to the best of his recollection, the date on which he believed his first state habeas petition [was provided] to prison authorities").

Moreover, to the extent that this qualifying phrase calls into doubt the completeness of Kadzik's electronic term searches, any deficiency is negated by the comprehensive manual searches Kadzik conducted. As described, Kadzik reviewed "the subject lines and to/from fields of all emails from the inbox, trash, and sent folders" and opened and read "any emails that, *based on either their subject line, author, or recipient, could have been potentially DOJ-related*." Second Brinkmann Decl. ¶ 10 (emphasis added). He also "opened and read *every single email* in any of his archived folders *that could have contained DOJ-related emails*." *Id.* (emphasis added). Kadzik's belt-and-suspenders approach provides more than adequate support for the conclusion that the Department of Justice's search was reasonably calculated to discover the records that Judicial Watch seeks here. Finally, Kadzik's representations about his email practices provide further support for this conclusion. In particular, Kadzik confirmed that "he did

13

not recall ever using his personal email account to send any other similar emails to John Podesta, or to anyone else associated with the Clinton Campaign.'" First Brinkmann Decl. ¶ 19. He also was "confident that his personal Gmail account—in its entirety—contained no agency records or potential agency records." Second Brinkman Decl. ¶ 5.

In sum, the Court concludes—based on the descriptions of Kadzik's electronic and manual searches and his representations about his email practices—that the Department of Justice has satisfied its burden to show that its search was adequate. Far from "conclusory adjectives" about the agency's search, *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007), the Brinkmann declarations provide sufficient detail about the scope and method of the Department of Justice's search for responsive records, the type of searches performed, who performed the searches, and what search terms were used. *See Reporters Comm. for Freedom of Press*, 877 F.3d at 402. Read together, the Brinkmann declarations, which "enjoy a presumption of good faith," *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam), "show beyond material doubt . . . that [the Department of Justice] . . . conducted a search reasonably calculated to uncover all relevant documents," *Weisberg*, 705 F.2d at 1351.

## CONCLUSION

For the foregoing reasons, the Court grants the Department of Justice's Motion for Summary Judgment, Dkt. 16, and denies Judicial Watch's Cross-Motion for Summary Judgment, Dkt. 18. A separate order consistent with this decision accompanies this memorandum opinion.

_____
**DABNEY L. FRIEDRICH**
United States District Judge

August 9, 2018